IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHUE VUE, | | |
| | Plaintiff, | CIV. S. 04-2527 GGH |
| vs. | | |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | | ORDER |
| | Defendant. | |
| _____/ | | |

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is denied, and the Commissioner's Motion for Summary Judgment is granted. The Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

        Plaintiff, born January 1, 1959, applied for disability benefits on August 27, 2002. (Tr. at 66.) Plaintiff alleged he was unable to work since June 1, 1999, due to diabetes and resulting weakness and blurry vision, tuberculosis, chronic back pain, depression and post traumatic stress disorder. (Tr. at 66, 73, 14.) In a decision dated March 22, 2004, ALJ Antonio

Acevedo-Torres determined that plaintiff was not disabled.[1] The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since April 12, 2001.
>
> 2. The medical evidence establishes that the claimant has severe diabetes mellitus, tuberculosis, and chronic back pain. However he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 3. The claimant's allegations regarding his symptoms and limitations are found to be not fully credible for the reasons stated above.
>
> 4. The claimant has the residual functional capacity to perform medium work (20 CFR § 416.945).

\\\\\

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|     |     |
| --- | --- |
| 5.  | The claimant's past relevant work as a busboy, childcare worker, and logo designer as the claimant described these jobs did not require the performance of the work-related activities precluded by the above limitations. The claimant is also able to perform his past job as a bus boy as this job is regularly performed in the national economy (20 CFR § 416.965). |
| 6.  | The claimant's impairment(s) do not prevent the claimant from performing his past relevant work. |
| 7.  | The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(e)). |

(Tr. at 21-22.)

ISSUES PRESENTED

Plaintiff has raised the following issue: Whether the ALJ Should Have Used the Testimony of a Vocational Expert in Determining Plaintiff's Residual Functional Capacity.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

\\\\\

ANALYSIS

<u>The ALJ Was Not Required to Consult a Vocational Expert</u>

Plaintiff contends that his pain is a nonexertional limitation which required the testimony of a vocational expert.

The Guidelines in table form ("grids") are combinations of residual functional capacity, age, education, and work experience. At the fifth step of the sequential analysis, the grids determine if other work is available. <u>See</u> generally <u>Desrosiers v. Secretary of Health and Human Services</u>, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

The grids may be used if a claimant has both exertional and nonexertional limitations, so long as the nonexertional limitations do not significantly impact the exertional capabilities.[2] <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, <u>Bunnell v. Sullivan</u>, 947 F.2d 341 (9th Cir. 1991) (en banc). The ALJ, however, is not automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional limitation. <u>Desrosiers</u>, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996). The ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a certain category. <u>Desrosiers</u> 846 F.2d at 578 (Pregerson, J., concurring). If so, the ALJ must use a vocational expert. <u>Aukland v. Massanari</u>, 257 F. 3d. 1033 (9th Cir. 2001).

---

[2] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary; <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989). Non-exertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; <u>Cooper</u>, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993).

4

The ALJ in this case found plaintiff's chronic back pain to be a severe impairment. He did not characterize any other pain or general weakness as a severe impairment.[3] Plaintiff's claim of generalized pain and weakness must have a demonstrable impact on plaintiff's ability to work before the ALJ is required to consult a vocational expert. Plaintiff alleges that pursuant to Dr. Fritz's opinion, he could only walk and stand for less than one hour, sit for four hours, bend and stoop infrequently, and could only occasionally reach and handle due to weakness and poor physical condition. Dr. Fritz found that plaintiff had active tuberculosis and severe malnourishment, as well as diabetes, uncomplicated. (Tr. at 228.) Plaintiff had lost 80 pounds in the last six months, appearing physically wasted, but was currently taking four-drug therapy. (Id. at 225.) This physician also noted, however, plaintiff's report that he does all activities of daily living, including light gardening, but cannot walk up a flight of stairs without feeling very short of breath. (Id. at 225-26.) The ALJ agreed that just after this August 6, 2001 internal medicine consultative exam, plaintiff could not perform sedentary work. Nevertheless, he rejected it because it was based on plaintiff's temporary condition which improved within six months of beginning therapy for tuberculosis. (Tr. at 16-17.)[4]

A few months later, on October 26, 2001, plaintiff's condition had already improved. He was seen for a chest clinic visit at the Sacramento Department of Health & Human Services, where he was reportedly doing well and had no appetite problems. (Tr. at 266.) The ALJ also took note of plaintiff's various visits to the We-Care Medical Center dated between July, 2002 and February, 2003, wherein plaintiff's exams were normal with no residual symptoms from tuberculosis or diabetes. (Id. at 17, 282-96.)

\\\\\

---

[3] Although he discusses various mental findings under the documentary evidence section of his brief, plaintiff does not raise any mental impairment as a reason to depart from the grids. Therefore, the court will not address an issue that was not raised.

[4] As the Centers for Disease Control indicate, TB is a curable disease. See www.cdc.gov/nchstp/tb/pubs/tbfactsheets/cure_eng.htm.

5

The ALJ additionally based his opinion on the more recent consultative exams of Drs. Borges and Jordan.  Dr. Borges examined plaintiff on October 4, 2002.  He diagnosed a generalized fatigue and weakness with unknown etiology.  (Tr. at 305.)  This family practitioner thought it could be from uncontrolled diabetes but he also suggested ruling out anemia, psychogenic causes, and obtaining a neurological consult, for this problem as well as for a fine tremor in the hands.  (Id. at 305-06.)  Plaintiff reported asthma but Dr. Borges suspected that he did not have this ailment as his lungs were clear and he was not on medication for this illness.  There was a history of tuberculosis but chest and lungs were normal.  (Id. at 301, 303.)  Furthermore, his last hospitalization was six months ago.  Although plaintiff reported a chronic productive cough, hemoptysis, and shortness of breath, he had no fever, chills, or weight loss, and was not taking any medication for tuberculosis at the time.  (Id. at 301.)   Dr. Borges assessed plaintiff's functional capacity, finding that he could sit for six hours, walk for two hours, lift, carry, push, and pull up to ten pounds, occasionally bend, squat, kneel, climb, and use hands.  He also recommended a psychiatric consultation to rule out depression.  (Id. at 306.)

The most recent medical record is that received after the hearing from Dr. Jordan who conducted a neurological exam on December 16, 2003.  She noted that plaintiff complained of constant pain involving the whole back, as well as diabetes with poor control, polyarthralgia with pain in joints of arms and legs, and various other medical complaints over the years which did not have clear associated objective findings.  This physician specifically stated, "while the claimant has a history of subjective complaints with medical problems as indicated above, examination shows limited findings of associated debility."  (Id. at 359.)  Despite using a cane, plaintiff could ambulate independently but was not very cooperative with formal gait testing, according to Dr. Jordan.  Plaintiff's functional capacity included sitting six hours, standing and walking six hours, occasional bending, stooping, and crouching.  (Id. at 359-60.)  There was no limit on handling, manipulating, and using push/pull devices and foot controls.  Plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally.  (Id. at 360.)

6

Both Drs. Borges and Jordan noted plaintiff's subjective complaints but openly discounted them based on a lack of supporting objective findings.  Furthermore, the record indicates little evidence of a severe ongoing problem in this regard as plaintiff rarely sought treatment for his pain and weakness.  Although Dr. Borges recommended a neurological consult because there was no explanation for plaintiff's generalized weakness, plaintiff did later receive a neurological exam from Dr. Jordan.  Plaintiff has a duty to come forward with evidence of his disability and he has failed in this regard.  The ALJ did not have a duty to be plaintiff's advocate in meeting his burden. Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir.1993).  Plaintiff has the ultimate burden of proof to produce the evidence that demonstrates he is disabled, 20 CFR § 404.1512(a); Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.

Furthermore, the ALJ properly gave Dr. Borges' conclusion of sedentary work less weight because it was based more on plaintiff's subjective complaints.  The objective medical findings did not support such limitations.  Dr. Jordan's more recent report confirms the lack of objective medical findings.  It was appropriate for the ALJ to place more weight on this most recent neurological consultation.  It is clear from these records that the ALJ was correct in applying the grids as the nonexertional impairments alleged by plaintiff did not significantly impact his ability to work.  Accordingly, the ALJ was not required to consult a vocational expert.

Plaintiff additionally objects to the ALJ's reliance on an earlier work history report which imposed lesser lifting and carrying limitations than a more recent work report.  In the earlier report, dated April 22, 2001, plaintiff indicates that he lifted ten pounds frequently and 17 pounds at most in his job as busboy from 1996 to 1997.  (Tr. at 83.)  In his job as logo designer in 1997 and 1998, he lifted 25 pounds frequently and 30 pounds at most.  (Id. at 84.)  His job as babysitter from 1998 to 1999 is described as requiring lifting ten pounds frequently and 20 pounds at most.  (Id. at 85.)

\\\\\

In the later report dated September 13, 2002, however, plaintiff states that in the same babysitter job, he lifted less than ten pounds frequently and ten pounds at most. (Tr. at 118.) He also states that his work as logo designer and busboy required him to lift less than ten pounds frequently. (Id. at 119-20.) He also refers to a shipping and receiving job not mentioned in the earlier report, which involved lifting 25 pounds frequently and up to 50 pounds. (Id. at 121.) Plaintiff complains that the ALJ used the earlier report to determine that plaintiff could do medium work. Both reports were in reference to the same work history (except the additional job listed in the later report). Both reports were completed and signed by plaintiff. Any inconsistency is plaintiff's error as he signed both statements under penalty of perjury. Contrary to plaintiff's implication, the reports do not characterize different time periods. Therefore, the ALJ was free to rely on the earlier report.

CONCLUSION

The court finds the ALJ's assessment is supported by substantial evidence in the record and based on the proper legal standards.

Accordingly, plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

DATED: 6/27/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Vue2527.ss.wpd